UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MANINDER SINGH KHATKAR, ) | CASE NO. C07-0133-JCC |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| ROBERT J. PALMQUIST, Warden, ) | |
| Federal Detention Center, et al., ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

## INTRODUCTION

Petitioner Maninder Singh Khatkar is a federal prisoner currently serving a fifteen-month sentence for misprision of a felony. Proceeding with counsel, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1.) The petition challenges a regulation issued by the federal Bureau of Prisons ("BOP") that limits the amount of time an inmate may serve in "community confinement," or at a halfway house. Respondents filed a response to the petition and petitioner filed a reply. (Dkts. 8 & 11.) After considering the parties' submissions and the balance of the record, the Court recommends that the petition be granted and that BOP be directed to consider petitioner's request to be released to a halfway house.

REPORT AND RECOMMENDATION
PAGE -1

## BACKGROUND

Petitioner pleaded guilty to misprision of a felony and was sentenced by this Court to fifteen months in prison followed by one year of supervised release. (Dkt. 8, Attach.1, Ex. 5.) Petitioner did not appeal to the Ninth Circuit Court of Appeals and is currently incarcerated at the Federal Detention Center in Seatac, Washington. The BOP projects his release date to be September 26, 2007. (*Id.*, Attach. 2 at 2.)

Based upon a regulation, BOP does not permit inmates to serve more than ten percent of their sentence in a halfway house. *See* 28 C.F.R. § 570.21 (hereinafter "the regulation"). Accordingly, the agency determined petitioner would not be eligible for transfer to a halfway house until thirty nine days prior to his release date. (Dkt. 8, Attach. 2 at 2.) He has been referred and accepted for placement at a halfway house beginning August 20, 2007. (*Id.*)

On October 23, 2006, petitioner submitted an Informal Resolution Attempt requesting to be allowed to spend more than thirty nine days in a halfway house. (*Id.*, Attach. 1, Ex. 6.) BOP denied the request, citing a "statutory limit to halfway house limited to the eligibility, pre-release preparation date." (*Id.*) On October 24, 2006, petitioner filed a Request for Administrative Review, again seeking to spend more than thirty nine days in a halfway house. (*Id.*) In a response dated December 3, 2006, BOP again denied the request, stating: "Pursuant to 18 U.S.C. 3624 ©, [Residential Re-entry Center (RRC)] placement for pre-release programming is limited to the last 10% of the prison sentence being served, not to exceed six months. With a 15 month sentence you are eligible for 39 days RRC placement." (*Id.*) Petitioner appealed this decision through a Regional Administrative Remedy Appeal, but, on December 20, 2006, the BOP denied the appeal for the reasons previously stated. (*Id.*) On January 17, 2007, petitioner appealed this decision

REPORT AND RECOMMENDATION
PAGE -2

with the Central Office of the BOP.  (*Id.*, Ex. 1.)  The Central Office's response is due March 9, 2007.  (*Id.*)  Petitioner filed the instant petition in this Court on January 29, 2007.  (*See* Dkt. 1.)

## DISCUSSION

As previously stated, petitioner challenges the regulation relied upon by BOP in denying his request for early transfer to a halfway house.  This claim is properly brought in a petition under 28 U.S.C. § 2241 because it concerns the manner of the execution of the sentence and not the fact of petitioner's conviction or sentence.  *See Tucker v. Carlson*, 925 F.2d 330, 331 (9th Cir. 1991).  Before considering that challenge, however, the Court must first consider respondents' argument that the petition should be dismissed because petitioner failed to completely exhaust his administrative remedies.

A.   <u>Exhaustion of Administrative Remedies</u>

Ordinarily, a petitioner in federal custody and seeking habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies.  *See Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990).  However, because the exhaustion requirement for § 2241 petitions was judicially created, it is not a statutory requirement and, therefore, not jurisdictional.  *See Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.,* 811 F.2d 1209, 1223 (9th Cir. 1987).  "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court."  *Brown,* 895 F.2d at 535.

Here, respondents note that an administrative remedy appeal is not considered to be exhausted until reviewed by BOP's Central Office, *see* 28 C.F.R. § 542.15, and that, in this case,

01 the Central Office's response to petitioner's appeal was not due until March 19, 2007.[1]  However,

02 petitioner argues that his failure to exhaust should be excused because the question here is one of

03 statutory interpretation and BOP is firm in its answer.  Thus, it is unlikely BOP will change its

04 position and requiring petitioner to finish the administrative review process would likely be futile.

05 In addition, the Court notes that, as his release date is September 26, 2007, petitioner's claim is

06 time-sensitive, with the possibility of becoming moot if he were required to wait to file a habeas

07 petition until BOP issued its final decision.

08     Respondents argue petitioner should be required to exhaust his administrative remedies

09 because doing so would allow BOP "to consider all of its options." (Dkt. 8 at 5.)  However,

10 nothing in the record supports the notion that BOP would consider any options other than to deny,

11 based upon the regulation, petitioner's request for early transfer to a halfway house.  Indeed, BOP

12 thrice denied petitioner's request to spend more than thirty nine days in a halfway house based on

13 their interpretation of the regulation.  (*See* Dkt. 8, Attach. 2, Ex. 6.)  As BOP argues in its

14 response to the § 2241 petition, it considers the regulation to be an unambiguous and categorical

15 limitation on the class of prisoners eligible for halfway house placement.  (*See generally* Dkt. 8.)

16 Therefore, it would be futile to require petitioner to pursue further administrative review of his

17 claim and the Court recommends excusing petitioner's failure to exhaust all remedies.

18 Accordingly, the Court will proceed to the merits of petitioner's claim.

19 B.     Petitioner's Challenge to BOP Regulation

20     Petitioner argues that the regulation issued by BOP that prevents him from being

21 ─────────────────────

22 [1] Respondents submitted their response to petitioner's petition prior to this due date.  It is not clear whether, to date, the Central Office has issued a response to petitioner's appeal.

REPORT AND RECOMMENDATION
PAGE -4

considered for release to a halfway house until he has served ninety percent of his sentence violates BOP's statutory authority. The statute that authorizes BOP to place prisoners in an appropriate facility, 18 U.S.C. § 3621(b) (hereinafter "the statute"), provides as follows:

> (b) Place of imprisonment – The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence–
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. *The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.* The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b) (emphasis added).

Until the end of 2002, BOP interpreted the statute as authorizing prisoners to serve any part, including the entirety, of their sentence in a facility such as a halfway house. (*See* Dkt. 8 at 6.) However, in December 2002, the Department of Justice Office of Legal Counsel issued an

REPORT AND RECOMMENDATION
PAGE -5

opinion that concluded BOP lacked such authority because, the Office of Legal Counsel reasoned, placement in a halfway house did not constitute imprisonment. (*Id*., Attach. 1, Ex. 6.) BOP subsequently limited placement in halfway houses to ten percent of a prisoner's term, or six months, whichever was less.

In 2004, two circuit courts of appeals found BOP's new interpretation of the statute and limitation on placement contrary to the plain language of the statute, which permitted BOP to transfer a prisoner to a halfway house at any time. *See Elwood v. Jeter,* 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn,* 383 F.3d 17 (1st Cir. 2004). In response to these rulings, BOP adopted a new tact and issued a regulation that it termed "its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." (Dkt. 8, Attach. 1, Ex. 6.) The regulation became effective on February 14, 2005 and states as follows:

> (a) The Bureau will designate inmates to community confinement **only** as part of pre-release custody and programming, **during the last ten percent** of the prison sentence being served, not to exceed six months.

28 C.F.R. § 570.21 (emphasis added).

The question presented by the instant habeas petition is whether the statute granting BOP authority to place prisoners is susceptible to the interpretation given it by BOP, as reflected in the above regulation. In reviewing an agency's construction of a statute, courts apply the test set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984). A court must first examine the text of the statute to determine whether Congress has spoken directly on the issue. *Contract Management, Inc. v. Rumsfeld*, 434 F.3d 1145, 1146 (9th Cir. 2006). If the intent of Congress is clear from the text of the statute, a court need inquire no further and must follow the expressed intent of Congress. *Id.* at 1146-47. If, however, the statute

01 is silent or ambiguous on the specific issue, a court must determine whether the agency's
02 interpretation is based on a permissible construction of the statute. *Id.* at 1147. If so, the Court
03 defers to the agency's determination. *Id.*

04     At the outset, the Court notes that the majority of courts that have considered this issue,
05 including the three circuit courts of appeals to have addressed it, have found that the regulation
06 conflicts with the statute. *See*, *e.g.*, *Levine v. Apker,* 455 F.3d 71, 86-87 (2d Cir. 2006); *Fults v.
07 Sanders,* 442 F.3d 1088, 1090-92 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons,* 432
08 F.3d 235, 244 nn. 9-10 (3d Cir. 2005) (collecting district court cases). [2] Most of these courts
09 found the statute's meaning clear and no deference to BOP's interpretation required. This Court
10 recently reached the same conclusion. *Pankratz v. Palmquist*, No. C06-1328-RSL, slip op. at 1
11 (W.D. Wash. Feb. 2, 2007) (adopting Amended Report and Recommendation issued Jan. 5,
12 2007). For the same reasons previously identified, the undersigned again recommends that the
13 regulation be found invalid.

14     The statute unambiguously grants BOP authority to place prisoners in an appropriate
15 facility *at any time*, including at the outset of their sentence, after considering five factors. *See* 18
16 U.S.C. § 3621(b); *Woodall,* 432 F.3d at 240. Because the text of the statute is clear, no deference
17 to BOP's interpretation is required. *Contract Management, Inc.*, 434 F.3d at 1146-47. The
18 regulation is impermissibly at odds with the statutory scheme because the regulation categorically
19 limits the amount of time that may be spent in a halfway house and imposes that limit without
20 regard to the statutory factors Congress mandated BOP to consider. *See Levine*, 455 F.3d at 80-

21

22     [2] The Ninth Circuit Court of Appeals has yet to address the issue.

82; *Woodall*, 432 F.3d at 245. Thus, in changing the previous policy and issuing the new regulation, BOP misconstrued the underlying statute and the regulation is consequently invalid.

C.   Respondents' Arguments

Respondents raise the same arguments previously brought before this Court. (*See* Dkt. 8 and *Pankratz*, No. C06-1328-RSL (Dkt. 9).) Respondents' principal argument is that BOP's authority for limiting an inmate's time in a halfway house stems from another statute, 18 U.S.C. § 3624, which provides as follows:

> (c) Pre-release custody – the Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c) (hereinafter "section 3624").[3]

Respondents contend that section 3624 "limits the BOP's ability to place a prisoner in pre-release status to the last ten percent (10%) of his sentence." (Dkt. 8 at 12.) The Court, however, sees no such limit in the plain language of this statute. Rather, section 3624 appears to set forth a minimum amount of time – ten percent of the inmate's sentence – that should be spent under conditions that will help an inmate prepare for re-entry into the community, *i.e.*, in a halfway house

---

[3] Respondents alerted the Court that, in 2005, two bills were introduced in Congress that would have rewritten this statute. (Dkt. 8 at 9, n. 1.) Interestingly, the bills would have increased the amount of time an inmate could spend in a halfway house to twenty percent of the inmate's sentence. *See* H.R. 1704 and S. 1934, available at http://thomas.gov. However, as of the date of this Report and Recommendation, the bills had not become law and so have no bearing on the Court's consideration of this matter.

or a similar facility. The statute does not say that *no more* than ten percent of the sentence may be served in such a facility, except to say that in no case should the time spent exceed six months. As the Third Circuit noted in *Woodall,* section 3624 "does not determine when BOP should *consider* CCC placement, but when it must *provide* it." 432 F.3d at 250 (emphasis in original).

Respondents also argue that several cases provide general support for BOP's authority to issue the regulation limiting an inmate's time in a halfway house to ten percent of the inmate's overall sentence. First, respondents note that the Ninth Circuit, in *United States v. Latimer*, 991 F.2d 1509, 1514-15 (9th Cir. 1993), held that under the federal Sentencing Guidelines, confinement in a halfway house does not constitute incarceration. Similarly, respondents maintain, BOP is free to adopt the same rationale and decline to substitute time in a halfway house for incarceration, except under limited circumstances (*i.e.*, when an inmate has already served ninety percent of his sentence). However, respondents' reliance on *Latimer* is misplaced. BOP unsuccessfully advanced this argument before in defense of its policy limiting time spent in halfway houses. *See Goldings,* 383 F.3d at 25-26. In addition, *Latimer's* holding was limited to the Sentencing Guidelines and did not discuss what constitutes "incarceration" under section 3621. *See* 991 F.2d 1509.

Respondents also rely on a Supreme Court case, *Lopez v. Davis*, 531 U.S. 230, 238-45 (2001), in which the Court examined a different statute than the one at issue here and upheld a BOP regulation that categorically denied eligibility for early release to inmates convicted of certain violent crimes, *see* 28 C.F.R. § 550.58(a)(1)(vi)(B). The underlying statute in *Lopez*, 18 U.S.C. § 3621(e)(2)(B), "provided that the BOP *may* reduce the prison term of an inmate convicted of a 'nonviolent offense' if the prisoner successfully completes a substance abuse program."

REPORT AND RECOMMENDATION
PAGE -9

*Woodall*, 432 F.3d at 246 (citing *Lopez*, 531 U.S. at 232) (emphasis in original). The statute, thus, reflected Congress's concern "about allowing possibly violent inmates to become eligible for pre-release." *Id*. The Court upheld the regulation because, in issuing it, BOP had "filled the statutory gap 'in a way that [was] reasonable in light of the legislature's revealed design.'" *Lopez*, 531 U.S. at 242 (quoting *Nationsbank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The decision in *Lopez* is distinguishable from the question here. The statute at issue in *Lopez*, unlike the statute here, does not require individualized consideration of each inmate. *Woodall*, 432 F.3d at 246-47. *See also Padilla v. Wrigley*, 2006 WL 3268967 at *7 (E.D. Cal. November 13, 2006) ("[T]he statute at issue [in *Lopez*] did not specifically include a set of factors to be considered by the BOP in making its determination of whether an offense could be classified as 'violent.'") Therefore, while in *Lopez* BOP simply filled in a statutory gap, here no such claim can be made because in issuing the regulation challenged by petitioner, BOP specifically excluded from consideration the very factors, set forth in 18 U.S.C. § 3621(b), Congress prescribed for consideration. *Id.* at *7-8.

In sum, the arguments presented by respondents again do not persuade the Court to deviate from the conclusion previously reached based upon a plain reading of the statute. In issuing the regulation codified at 28 C.F.R. § 570.21, BOP did not act consonant with Congress's intent in passing the underlying statute, 18 U.S.C. § 3621(b). Accordingly, the regulation is invalid and petitioner is entitled to be considered for release to a halfway house prior to having served ninety percent of his sentence.

D.  Remedy

Respondents suggest that, if this Court finds the regulation to be invalid, the appropriate

REPORT AND RECOMMENDATION
PAGE -10

remedy would be reconsideration of petitioner's request to be placed in a halfway house, as opposed to automatic placement. The Court agrees. Accordingly, the recommended remedy is that BOP be directed to reconsider petitioner's request within fourteen days from adoption of this Report and Recommendation.

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be GRANTED. Respondents should be directed to reconsider petitioner's request for transfer to a halfway house or similar facility, based upon the factors outlined in 18 U.S.C. § 3621(b), without regard to the time limits set forth in 28 C.F.R. § 570.21. A proposed Order reflecting this recommendation is attached.

DATED this 10th day of April, 2007.

Mary Alice Theiler
United States Magistrate Judge